Good morning. Good morning. Are you going to divide? Oh, that's the other side, the other case. I thought you were going to divide your time with somebody. No, just me here today. May it please the Court, Lasley Witt for Petitioner Jose Passalaqua. I'd like to reserve three minutes for rebuttal, if I may, and I'll pay attention to my time. I would like to start with three areas that I think Respondent and I can agree on. This case hinged almost entirely on Ashley O's testimony. Both the State and Defense Council recognized this in opening statements and closing arguments, and the entire defense hinged on discrediting her testimony with respect to the kidnapping and sexual assault. Despite what the District Court here described as compelling inconsistencies, dramatically shifting versions, and flat-out, factually false statements with respect to her testimony, it also noted a lack of any physical evidence of rape. Nonetheless, the jury convicted on all counts. But, say all that's true, there were inconsistencies, but those were all highlighted through some vigorous cross-examination. Her inconsistencies in many categories were brought to the jury's attention, and the jury didn't believe your client's position. That's why we have juries. How do we reverse something that the jury weighed and decided against? That's absolutely true what you've said about the fact that they convicted despite a vigorous cross-examination and all these inconsistencies pointed out. What I would say is the term, the straw that broke the camel's back, comes to mind. There is a point when all the inconsistencies are weighed and you throw one more, you throw two more on, and either one or more jurors decides that they can't now reconcile it. So there is a point when the scale shifts. Okay. Focus on the Lexapro. That's when you have the two items that weren't put before the jury, the fact that there was no lock on the door. The fact there's no lock on the bathroom door. Of course, the witnesses to that would have been people who were family members, so the California Supreme Court could have concluded those would have been biased witnesses. So focus on Lexapro. What's the foundation for saying that if he had put on evidence of these supposed side effects of Lexapro, that there was some foundation to say that that would have been compelling evidence? I think the Lexapro. In your papers in the complaint, a habeas complaint, and in the psychiatrist or the psychologist's affidavit, it comes down to the possibility that there could have been fantasizing. Is that enough to say that there was clear prejudice in the counsel not pursuing that? I would say that the Lexapro evidence and the delusion or the possibility of delusions is incredibly important here, because in a case like this, as any defense counsel knows, if you're going to say that the victim of a sexual assault is lying, you better have a good explanation for it or that they're making up a story. We know for sure she was making up stories on all kinds of levels about what happened that day. But at the end of the day. That's all true. But the reality is on the Lexapro, Dr. Plotkin, the defense counsel did try to introduce some evidence that he was going to have, because the court found there would be a mini trial about what the effects of this were, coupled with the fact that Dr. Plotkin said you could call it either way. Sometimes it improves your memory. Sometimes it declines. Bottom line is, how can this be a determinative factor in the case? It's a total guessing, isn't it? Well, I would like to state first that both the state and the magistrate judge seemed to conflate what Dr. Plotkin would have testified to. But the district court noticed and made its own statement on that, that, in fact, Dr. Plotkin did not. There was no evidence going to be introduced about Lexapro. He was going to speak to self-cutting and about a loose connection between self-cutting and promiscuity. And so that was excluded. What I'm talking about, though, is this is a 3RT 1516. Dr. Plotkin said he could not, in quotes, make a call either way because Lexapro could improve or erode someone's judgment. That's what I'm talking about. Yeah, and that was speaking to the judgment aspect, which, of course, would defense counsel introduced on credibility. But there was no evidence proffered regarding hallucinations or delusions. And I think that it's incredibly important for a jury to have some way to deal with inconsistencies that she presented. And based on what the district court said, I think there's adequate inconsistencies. Let me ask you this, counsel, because I'm looking at Dr. Kazanov's declaration, and it isn't too different than the other doctors in that there is an opinion that it's possible that she could have been experiencing a manic switch. And one of the side effects is delusion. So it's possible. So had counsel called an expert like Dr. Kazanov, I suppose the best that you could do is that this is the explanation for why she's lying. But given the fact that it was brought out before the jury that she was materially inconsistent in many important respects, and that was her credibility was the centerpiece of the defense, how is it unreasonable for the state court to say that the failure to call an expert was not deficient? So to address my question in light of the double deference. Thank you. I think it's really important to understand what the state court did here. The state court did not decide that there was no ineffective assistance of counsel. What they decided was that petitioner had not pled a prima facie case of ineffective assistance of counsel. And how do we know that? We know that because the state court did not issue an OSC. Instead, they denied it in a summary denial. And as we know from Harrington v. Richter, that is on the merits. But what we also know from Penholster is that we then look to see what did the state court know and do. And in this case, when the state court does not issue an OSC, it means they've found that petitioner, assuming that all the facts he's alleged are true, that he has not pled a prima facie case. You may want to hold that thought. You're right. I'd like to hear the end of it. Okay. Okay, great. This court in Nunez and Earp has decided is that when an OSC is not issued, then the focus of the 2254D argument in this court is to see was it unreasonable for the state court not to find a prima facie case. So that's taking as true all of petitioner's allegations and then deciding whether it meets the standard. And in this case, it clearly does. He alleged that his trial counsel failed to elicit these two important – investigate and present these two important pieces of evidence. He supplied declarations to support those. With respect to your earlier question. So coming back to Judge Wynn's question, what they've put forward is the possibility. And you think that's enough under what you're saying? I do. I think the possibility is enough. What's the strongest case you have to support that? Well, if we take for true the allegations as presented by petitioner. Taking it as true. Yes. There's a possibility. Yes, that she was. On that record, what case would come the closest to saying that that is enough for a prima facie case of ineffective assistance on both prongs? Well, I think the point is, is that it absolutely supports the defense counsel's – it absolutely supports the defense that he chose to present. And so if you look at the lock evidence and you look at the Lexapro, both point to the fact that she has, instead of lying, that she has delusions that would account for all of her inconsistencies. So I think that it goes to that. I don't have a particular case that I can cite right now for that. But in our briefing, we do cite several cases for the proposition that where defense counsel has chosen a certain line of defense, that where he fails to present evidence that supports that defense, that is ineffective assistance of counsel. And I would reserve just – I have 30 seconds to reserve. All right. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court. Supervising Deputy Attorney General Stephen Matthews for respondent. The question before the Court is whether the state court was unreasonable in rejecting these claims of ineffective assistance of counsel. The district court properly concluded that the state court was not. As to the issue of the bathroom door lock, first of all, counsel had a good reason for not putting on that evidence. Excuse me. Are you agreeing with counsel that she has articulated the issue before us, that it's a prima facie case issue? Yes, but in one important aspect, when the court is reviewing a prima facie case, the state court, the court reviews the evidence put forward by a petitioner and also the record of the court. The court is not blind to what occurred at trial or the testimony at trial. So in analyzing a prima facie case, you don't look solely at petitioner's evidence. No, I understand that. Here, counsel, in fact, as to the bathroom door lock, had a very good reason for not putting on that evidence. First of all, we don't have a declaration put forward by counsel as to what his strategy was, nor is there anything in the record as to why such a declaration was not sought. In any event, here, the victim testified that she did lock herself in the bathroom door, and, in fact, evidence was put before the court through the district attorney who stated to the court that petitioner's father had been to the landlord, asked if there was a lock on the door, and, in fact, the landlord said there is a lock on the door and please leave me alone and don't go through the courts or the police if you want to come back. So the counsel, we don't know what counsel did. We don't know if counsel investigated the bathroom door lock, but what we do know is that the victim testified that there was a lock on the bathroom door and that the district attorney put before the court that the petitioner's father had been to the residence asking whether there was a lock on the door and the landlord said there was. There was a good reason for not putting on evidence of the bathroom door lock. As to prejudice, I'll address that as well as to the Lexapro use. As to the Lexapro use, I think what's not the court, that counsel hasn't put forward before the court is that the counsel, in fact, sought permission to include in his opening statement to the jury a reference to the fact that a few weeks prior to the incident, the victim, quote, was actually being hospitalized for self-cutting, was under psychiatric care, taking an antidepressant and anti-anxiety medication called Lexapro. That's at page 609, second volume. Counsel sought to put on evidence of the victim's psychiatric treatment, care, and her end that she was taking an antidepressant and anxiety medication. The court said no. You can't put that evidence on through your opening statement until you provide a foundation. Then petitioner's counsel sought to put on that evidence. Petitioner got a board-certified psychiatrist who he sought to put on to testify as to the victim's psychiatric care. And as the court has pointed out, during the 402 hearing to determine whether a foundation had been laid for that testimony, the witness, in fact, said, I don't think the antidepressant, there's only one antidepressant at issue here, and that's Lexapro, I don't think the antidepressant you could make a call on either way that could improve or erode somebody's judgment depending on what phase they're in or what they're being treated for. That was the cutting focus. But the counsel can't be faulted, I don't think. No, I understand, but he was focused on cutting. He was focused on cutting and the victim's psychiatric treatment. The point is that he did investigate. He did have somebody who advised him on Lexapro. That's correct. He had a board-certified psychiatrist he'd called to testify at trial on petitioner's behalf who was seeking to testify as to the victim's psychiatric care and the cutting and the antidepressant. Counsel sought an opening statement to reference the antidepressant and anxiety medication. And the trial court denied that. And also, Doctor, with respect to ---- Her argument, counsel focused on the side effect of Lexapro being delusions, and the declaration that's in the record talks about studies of teenagers who experience hallucinations and paranoid delusions. So if I understand her arguments today, she tried to distinguish between judgment being impaired and actually suffering from delusions that could have explained the various inconsistencies brought out at trial. That's correct. So how do you respond to that? What petitioner is asking, of course, or suggesting for the court, is that counsel was ineffective for not expert shopping, for finding another expert who would have provided different testimony than the board-certified psychiatrist that was retained to testify on a petitioner's behalf. Nevertheless, even the expert that they put forward on habeas, counsel wouldn't have been effective for not putting on that testimony, nor would petitioner have been prejudiced for the failure to put on that testimony, for the reasons that the district court and the magistrate properly outlined, and that is, petitioner can't demonstrate, first of all, that it would have been admitted. The judge had already denied petitioner's own psychiatric testimony in this regard, as it would provide in many trials. Counsel could have said that trying to find a new psychiatric witness to provide different testimony would have likely met the same result. Moreover, even as to that testimony, there was no testimony that the victim never took Lexapro. There was no testimony or evidence how much she took. There was no testimony that this victim actually experienced those side effects. The district attorney, as the court found, would have been able to show that those side effects were very remote and rare, only 1.2% experiencing such side effects. So the fact is, would counsel have had a reasonable basis for not putting on that evidence? Is there a strategy that we can reasonably determine that counsel would have rejected putting that on? Yes, because such findings would have been rejected by the court, wouldn't have been able to put them on, and the testimony was based on very little that would relate to this petitioner or the victim. Bottom line, it's the government's position that the first prong of Strickland is clearly not satisfying. As well as the second prong, that's correct. We haven't talked about that yet. Right, and in fact, as to the second prong, the question is whether the jury would have believed that the victim hallucinated all these events. But the fact is, as the district court found, there was substantial evidence corroborating her account, including the fact that there was photos in the camera in the petitioner's residence that corroborated that she was forced to pose for erotic photos. The landlord saw her uncontrollably crying as she left the residence. There was no question she was there, and the photos were taken of her in erotic poses and performing fellatio on petitioner. That was found in the petitioner's residence. All that corroborated her account. Finally, as the court has already noted, there's no question that this evidence wouldn't have given the jury's perceptible or significant different impression of the victim's credibility. That was already significantly questioned by trial counsel in his cross-examination, and all of that was put before the jury. The trial counsel in his closing argument highlighted those inconsistencies and the multiple versions of the victim's story, asked the jury to consider that the story had changed, and specifically argued that the victim's credibility depended on the presence of a second man. So the question is whether the state court was unreasonable in concluding that counsel had a reasonable basis for not putting on that evidence, that there were strategies available, as noted in the pinholster, that we're supposed to be considering in this court, the range of possible reasons petitioner's counsel may have had for proceeding as they did. So that's the inquiry we're conducting that we're on here in the behaviors, and here the state court reasonably rejected both claims of ineffective assistance. Subject to any questions, I'll submit. I don't think we have any others. Thank you, counsel. Counsel, we ran you over a little bit, so we're going to give you a minute and a half. Okay, give her a minute and a half. Great. Thank you. I just wanted to touch on two points. Respondent notes says that there's evidence that there was a bathroom lock, and so that dispelled defense counsel's obligation to look into this. And I just want to say that there's absolutely no evidence to that. What is referring to is the prosecutor's statement at trial that the landlord, Nicole Patrick, had learned from a current tenant that there was now a lock on the door. Well, what we're talking about here was not the absolute truth of it one way or another. The question was whether counsel was deficient within the meaning of Strickland. Yes. And if I understood what he was saying, it was, hey, there's contrary evidence here. Who knows what the jury would have believed. Bottom line is that came out. Right. I guess what I'm saying is that there was no contrary evidence. This was just a statement by the prosecutor to the court. And, in fact, with this type of generalized unsupported statement, it wouldn't dispel his duty to check it out. For example, she had already said twice to police and once to her boyfriend that she had jumped to escape from a bathroom window. That bathroom window didn't exist. So then when she moved into, I locked myself in the bathroom when I had to come out because there was nowhere to go, because there was no window. I was then forced to orally copulate Mr. Pasolacqua. To show that that bathroom lock didn't exist would be critical to saying, look, her story keeps shifting and we keep finding out that it's still wrong. It's a minor detail. Whether it was locked or not, she came out. I just think that in light of all the other consistencies, it's not a minor detail. I would also. I think we're over time now. I know that you would eloquently argue your client's case for an indefinite period of time were there that time. All right. Thank you so much. We thank you very much, both of you, for your argument. The case just argued is submitted.
judges: Fisher, M. Smith, Nguyen